# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| GREGORY CONTE AND WARREN BALOGH<br><br>*Plaintiffs*,<br><br>v.<br><br>COMMONWEALTH OF VIRGINIA, *et al.*<br><br>*Defendants.* | CASE NO. 3:20-CV-00038<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendants' motions to dismiss, Dkts. 10, 16, 21, 23, and 28. Plaintiffs Gregory Conte and Warren Balogh, attendees of the 2017 Unite the Right rally, have sued sixteen defendants, including the Commonwealth of Virginia, Virginia's Governor, Virginia State Police officials, Virginia's Secretary of Public Safety and Homeland Security, the City of Charlottesville, Charlottesville's Mayor and Vice Mayor, the Charlottesville Police Department, Charlottesville's Police Chief, and alleged Antifa leaders. They claim that Defendants violated their First Amendment speech rights and Fourteenth Amendment rights to due process and equal protection, and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Plaintiffs' Complaint is partially foreclosed by the Fourth Circuit's opinion in *Kessler v. City of Charlottesville*, No. 20-1704, 2022 WL 17985704 (4th Cir. Dec. 29, 2022) (per curiam) (unpublished), which raised similar claims. Plaintiffs' other claims fare no better. For the following reasons, their *pro se* suit will be dismissed.

## Background

The following facts are alleged in Plaintiffs' Complaint and must be assumed true for purposes of resolving a motion to dismiss. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir.

1

2016) (reiterating the appropriate standard of review). Plaintiffs attended the Unite the Right ("UTR") rally in Charlottesville in 2017 "to engage in expressive political activity in opposition to a proposal by the Charlottesville City Council to remove the statue of Confederate General Robert E. Lee" from Charlottesville's Lee Park. Dkt. 1 ("Compl.") ¶ 23. On June 13, 2017, Jason Kessler secured a permit for the UTR rally to take place on August 12, 2017. *Id.* ¶ 28. The City of Charlottesville ("the City") notified Kessler on August 7, 2017, that it was revoking the permit, but it did nothing "to modify or revoke the permits issued to counter-protestors for demonstrations planned within blocks of Lee Park." *Id.* ¶¶ 29–30. Judge Glen E. Conrad granted a preliminary injunction on August 11, 2017, which enjoined the City and its City Manager Maurice Jones from enforcing their attempt to revoke the permit, allowing the demonstration to proceed. *Id.* ¶¶ 2, 31 (citing *Kessler v. City of Charlottesville, Va., et al.*, No. 3:17-cv-00056, 2017 WL 3474071 (W.D. Va. Aug. 11, 2017)).

      Plaintiffs assert that, while acting under color of state law and "with deliberate hostility and indifference to the rights of Plaintiffs and other UTR demonstrators," Defendants acted to "restrict UTR demonstrators from expressing specific viewpoints while at the same time permitting counter-protestors to engage in violent and lawless behavior." *Id.* ¶ 32. Near Lee Park, on Market Street, counter-protestors "rallied" and City and State Police "restrict[ed] UTR demonstrators from entering by any means other than the Market Street entrances." *Id.* ¶ 33. Plaintiffs allege that the counter-protestors "includ[ed] large numbers of 'Antifa.'" *Id.* Plaintiffs further allege that, "[w]hen attendees tried to pass, Antifa locked arms and attacked with fists, poles, hammers, and other weapons." *Id.* ¶ 34. In Plaintiffs' view, "[n]o such combat would have occurred at the UTR demonstration if not for the deliberate acts of Defendants." *Id.* ¶ 35.

Charlottesville Chief of Police Al Thomas and Virginia State Police ("VSP") Lieutenant Becky Crannis-Curl "were present in supervisory and/or final decision making capacities." *Id.* ¶ 36. Chief Thomas, after learning violence erupted, allegedly stated: "Let them fight, it will make it easier to declare an unlawful assembly." *Id.* ¶ 38. Lt. Crannis-Curl said "VSP was going 'off-plan' and that she was not going to send any troopers out into the crowds to make arrests." *Id.* ¶ 42. VSP Superintendent Colonel Steven Flaherty stated that "VSP's primary role on August 12 was 'park security,' and troopers were not going to 'wade into the mess on Market Street.'" *Id.* Similarly, Chief Thomas put forward a non-intervention order for Charlottesville police, which they obeyed. *Id.* ¶¶ 45, 47. "He told his subordinates after a previous July 8, 2017 demonstration that 'I'm not going to get [protestors] in and out' during the UTR rally." *Id.* ¶ 45. Therefore, Plaintiffs allege that when counter-protestors refused to let UTR attendees access the rally location, "[t]he officers stood in silence." *Id.* ¶ 47.

Law enforcement eventually "moved in . . . to declare an unlawful assembly." *Id.* ¶ 48. However, Plaintiffs allege that the officers enforced the order to disperse against only UTR demonstrators, not counter protestors. *Id.* Plaintiffs assert that they and other UTR demonstrators could not "peacefully rally, hear any speakers, or engage in any other lawful political speech or expressive activity" because of "Defendants' deliberate interference and pretextual dispersal order." *Id.* ¶ 50. They also assert that they "were forced to defend themselves from physical violence wrongfully perpetrated by violent counter-protestors and by VSP officers themselves." *Id.* Plaintiffs allege that they "and the vast majority of other UTR demonstrators dispersed" after police declared an unlawful assembly, but "Antifa did not." *Id.* ¶ 49.

Police deployed a "chemical 'pepper spray' like substance," which hit Plaintiff Balogh in his head, causing him to "suffer[] a burning sensation as the chemical mixed with his sweat," and

3

he "suffered temporary loss of vision." *Id.* ¶ 54. Plaintiffs assert that Defendants' use of such a substance was not needed because "there was no violence within the park." *Id.* ¶ 60. Days later, Plaintiff Balogh continued to "experience[] a burning feeling," and "[w]hen he showered, the residue from the chemical burned his eyes days after the incident." *Id.* ¶ 55. Also, "a masked attacker wielding a stick like weapon from behind" struck him in the arm after he exited Lee Park, injuring him. *Id.* ¶ 56. Plaintiffs assert Plaintiff Balogh could not "properly identify his attacker due to Defendants['] failure to enforce [Va.] Code § 18.2-422 'Prohibition of wearing of masks in certain places' and exceptions regarding counter-protestors such as Antifa." *Id.* ¶ 57.

      Defendants include the Commonwealth of Virginia, Terence McAuliffe (Governor of Virginia at the time of the events alleged in the Complaint, named in his individual capacity), Virginia State Police, Steven Flaherty (a Colonel in the Virginia State Police at the time of the events alleged in the Complaint, named in his individual capacity), Becky Crannis-Curl (a Lieutenant in the Virginia State Police at the time of the events alleged in the Complaint, named in her individual capacity), Brian Joseph Moran (Secretary of Public Safety and Homeland Security for Virginia at the time of the events alleged in the Complaint), the City of Charlottesville, Michael Signer (Mayor of Charlottesville at the time of the events alleged in the Complaint, named in his individual capacity), Wes Bellamy (Vice Mayor of Charlottesville at the time of the events alleged in the Complaint, named in his individual capacity), the Charlottesville Police Department, and Al Thomas, Jr. (Chief of Police of the City of Charlottesville at the time of the events alleged in the Complaint, named in his individual and official capacities).[1]

---

[1] Plaintiffs also name as Defendants Gorcenski, Wispelwey, Dixon, Jenkins, and MacAuley, *id.* ¶¶ 6–21, but never served process on them, warranting the dismissal of claims against them.

4

After Plaintiffs filed their Complaint and Defendants filed their motions to dismiss, this case was stayed until fifteen days after issuance of the Fourth Circuit's mandate in *Kessler v. City of Charlottesville*, No. 3:17-cv-72, Dkt. 61. The Fourth Circuit affirmed *Kessler v. City of Charlottesville*, 441 F. Supp. 3d 277, 292 (W.D. Va. 2020), *aff'd*, No. 20-1704, 2022 WL 17985704, and Defendants' motions to dismiss are now ripe for review.[2]

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

---

[2] The Court notes that Plaintiffs argue their claims should be regarded separately from *Kessler v. City of Charlottesville, Va., et al.*, No. 3:17-cv-00056, 2017 WL 3474071 (W.D. Va. Aug. 11, 2017) "because that case is ripe for appeal, and there exists a possible conflict for Judge Moon," since two of his law clerks knew the lead party in *Sines v. Kessler*, No. 3:17-cv-72. Dkt. 36 at 6–7. During their time working for the Court from 2019 to 2020, the law clerks at issue had no involvement in this case (or *Sines* for that matter), since it was transferred to the Court back in August 2019. Nor have those law clerks worked for the Court since August 2020. And, for reasons delivered at a hearing held on January 11, 2021, the Court denied Plaintiffs' motion for recusal. Dkt. 60. No conflict exists.

Further, district courts must construe *pro se* complaints liberally, but that "does not require those courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## Analysis

### A. Sovereign Immunity Bars Claims Against the Commonwealth of Virginia and the Virginia State Police

Plaintiffs bring First Amendment, Fourteenth Amendment, gross negligence – failure to train, RICO, and RICO conspiracy claims against the Commonwealth and the VSP. State sovereign immunity under the Eleventh Amendment bars these claims.

"[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990) (internal citations omitted); *see also Alden v. Maine*, 527 U.S. 706, 713 (1999). State sovereign immunity extends to "arms of the State," including state agencies like the VSP. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). Congress may waive a State's immunity, but it must do so either "explicitly and by clear language" or via a statutory history that "shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the State." *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Plaintiffs bring their First Amendment, Fourteenth Amendment, and gross negligence – failure to train claims[3] under 42 U.S.C. § 1983, which allows suit against a "person who, under

---

[3] Plaintiffs argue the Commonwealth and Municipal Defendants were "grossly negligent" in "fail[ing] to plan for the rally as reestablished at its original location[]" and in "fail[ing] to train police and deliberately interfere[ing] in the duties of each and every officer assigned to the rally that day, resulting in irreparable harm to the Plaintiffs." Compl. ¶¶ 80, 85, 86. Though this claim cites § 1983, it fails to allege constitutional harm. *Id.* at 17. Plaintiffs cannot sue under § 1983 to recover for alleged common law harms. *See Mitchum v. Foster*, 407 U.S. 225, 242

6

color of any statute, ordinance, regulation, custom, or usage" violates another's statutory or constitutional rights. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71; *see also Quern*, 440 U.S. at 345 ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States."). Further, "[s]tate police departments are considered arms of the state and are immune from civil liability." *Benton v. Layton*, No. 3:22-cv-225, 2022 WL 4274121, at *3 (E.D. Va. Sept. 15, 2022) (internal citation omitted). Thus, neither the Commonwealth nor the VSP is a person who can be sued under § 1983, and these Defendants have not otherwise consented to be sued, so Plaintiffs have no basis to overcome sovereign immunity. Section 1983 claims against the Commonwealth and the VSP will accordingly be dismissed.

Sovereign immunity also forecloses Plaintiffs' RICO claims. Plaintiffs bring their RICO claims under 18 U.S.C. § 1962, which states that "[i]t shall be unlawful for any person" to engage in or profit from racketeering. 18 U.S.C. § 1962(a)–(d). Section 1962 does not explicitly and by clear language or by statutory history evince an intention to waive State sovereign immunity, and thus the § 1962 claims against the Commonwealth and VSP will also be dismissed. *See Stewart v. Univ. of N.C. Sys.*, 673 F. App'x 269, 270 (4th Cir. 2016) (per curiam) (unpublished) (affirming that RICO claims against a state university system and its employees were barred by Eleventh Amendment immunity); *see also Holloman v. Va. Dep't of Corr.*, No. 7:22-cv-00478, 2022 WL 17477924, at *1 (W.D. Va. Dec. 6, 2022).

---

(1972). And even if Plaintiffs could bring their common law claim under § 1983, the claim would fail because negligent training is not an actionable tort in Virginia. *E.g.*, *Gray v. Home Depot*, No. 3:14-cv-488, 2015 WL 224989, at *7 (E.D. Va. Jan. 15, 2015); *Morgan v. Wal-Mart Stores East, LP*, No. 3:10CV669-HEH, 2010 WL 4394096, at *4 (E.D. Va. Nov. 1, 2010). Thus, Plaintiffs' failure to train claim must be dismissed.

### B. Claims Against the Charlottesville Police Department Must Be Dismissed as It is Not a Separate Suable Entity Under Virginia Law

Plaintiffs improperly name the Charlottesville Police Department ("CPD") as a defendant. The CPD lacks capacity to be sued, a standard determined by state law. Fed. R. Civ. P. 17(b); *see also Mukuna v. Gibson*, No. 1:11-cv-493, 2011 WL 3793336, at *5 n.2 (E.D. Va. Aug. 25, 2011) (citing Fed. R. Civ. P. 17(b)(3)). Under Virginia law, "an operating division of a governmental entity . . . cannot be sued unless the legislature has vested the operating division with the capacity to be sued." *Smith v. Town of South Hill*, 611 F. Supp. 3d 148, 167 (E.D. Va. 2020) (internal citations and quotations omitted). Because CPD is "merely an arm of [the City] . . . without capacity to be sued separately," *see* Va. Code Ann. § 15.2-823, the Court will dismiss the claims brought against CPD. *Guerrero v. Deane*, No. 1:09-cv-1313, 2010 WL 670089, at *17 (E.D. Va. Feb. 19, 2010); *see also Mercer v. Fairfax Cnty. Child Protective Servs.*, No. l:15–cv–302, 2015 WL 5037636, at *3 (E.D. Va. Aug. 25, 2015).

### C. The Individually Named Defendants Have Qualified Immunity for the § 1983 Speech and Due Process Claims and the RICO Claims

When state actors' conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, qualified immunity shields them from liability. *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019). "A government official violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear such that every reasonable official would understand that what he is doing violates that right—in other words, the legal question must be 'beyond debate.'" *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 725 (E.D. Va. 2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Fourth Circuit treats as relevant the decisions of the U.S. Supreme Court, the Fourth Circuit, and the highest court of the state in which the conduct

occurred. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir. 2010) (internal citations omitted). And qualified immunity applies to § 1983 and RICO claims. *Turner*, 930 F.3d at 644; *U.S. Tobacco Cooperative, Inc. v. Big South Wholesale of Va., LLC*, 365 F. Supp. 3d 604, 615 (E.D.N.C. 2019) (finding that "defendants are entitled to qualified immunity on plaintiffs' federal RICO claims"); *Cockrell v. Cates*, 121 F.3d 705 (5th Cir. 1997) (unpublished) (per curiam) ("We are aware of nothing in the RICO statute that would allow plaintiffs' artful pleading to prevent these defendants from asserting qualified immunity.").

Plaintiffs argue that Defendants Thomas, Crannis-Curl, Flaherty, and Moran are liable for the actions of police who failed to stop hecklers from interrupting the UTR rally. Compl. ¶ 76. Plaintiffs base their supervisory liability claim on the allegation that these Defendants "issued orders and/or acquiesced in actions that violated the rights of the Plaintiff[s] as stated herein." *Id.* But the Fourth Circuit has held that there was no clearly established right to police intervention at the time of the UTR Rally. *Turner*, 930 F.3d at 646–47. The Fourth Circuit also affirmed *Kessler*, 441 F. Supp. at 293, *aff'd*, 2022 WL 17985704, which held there was no clearly established right "to state protection of one's First Amendment rights from third parties." Similarly, no clearly established law governed the alleged RICO violations. Indeed, these violations fail on the merits, as will be discussed *infra* Section G. Thus, the individually named state actor Defendants have qualified immunity from suit for the § 1983 speech and due process claims and the RICO claims.

D. **Plaintiffs Have Failed to State a Plausible *Monell* Claim Against the City**

Plaintiffs attempt to bring a claim against the City based on Police Chief "order[s] not to engage over 'every little thing'; not to 'go in and break up fights'; not to interrupt 'mutual combat'; and [that] officers were not to be sent out among the crowd where they might get hurt."

9

Compl. ¶ 46. But "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original). Municipal corporations are not vicariously liable under § 1983 for their employees' actions under a *respondeat superior* theory. *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011) (also explaining that "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983" "[i]n limited circumstances"); *Pembaur v. Cinncinati*, 475 U.S. 469, 479 (1986). Instead, liability only attaches to the municipality directly, as opposed to its officials in their official capacity, in cases where the municipality causes the deprivation "through an official policy or custom." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (internal citation omitted). The Fourth Circuit has recognized that

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

*Id.* (internal citation omitted).

Plaintiffs have alleged no facts indicating the City acted through an express policy, through decisions of persons with final policymaking authority, through any omission manifesting deliberate indifference to the rights of citizens, or through a practice so persistent and widespread as to constitute a custom or usage with the force of law. Pursuant to § 5.01 of the Charlottesville City Charter, the CPD is expressly under the general supervision of the City Manager. Charlottesville City Code § 2-146 (1990) provides that the City Manager was the "chief executive and administrative officer of the city government" responsible for "enforce[ment] of the laws of the city" and was "the director of public safety, with general

supervision over the . . . police department of the city." Further, pursuant to Charlottesville City Code § 2-149 (1990), the City Manager had the "power to dismiss, suspend and discipline, in accordance with duly adopted personnel regulations, all officers and employees in such departments, except as otherwise specifically provided by law." And under § 20-3, the chief of police "shall always be subject to the orders and regulations of the city manager and the city council." Police Chief Thomas, who proffered the orders alleged above, was thus not the "final policymaker," with regards to the orders, and Plaintiffs do not allege that the City Manager ever reviewed or approved the orders. Also, Plaintiffs allege that City Council member Defendants Michael Signer and Wes Bellamy were final policymakers for the City, Compl. ¶¶ 13–14, but Plaintiffs do not allege any actions for which they used this authority,[4] and under the City's Charter, City Council members lack any corporate power or legislative and executive authority as individuals.

Therefore, Plaintiffs' claims that the City violated their First and Fourteenth Amendment rights will be dismissed.

### E. Plaintiffs Failed to State a Claim for Violation of the First Amendment Through a Heckler's Veto or Failure to Protect

The Fourth Circuit affirmed the dismissal of similar First Amendment claims, i.e., claims of a heckler's veto and failure to protect brought by UTR attendees, in *Kessler*, 2022 WL 17985704, at *1. The Fourth Circuit recognized that the First Amendment did not impose an affirmative obligation on the City and its officials to prevent public hostility to the events of the UTR rally. *Id.* (citing *Doe v. Rosa*, 795 F.3d 429, 440 (4th Cir. 2005)); *Musso v. Hourigan*, 836 F.2d 736, 743 (2d Cir. 1988)). As in *Kessler*, Plaintiffs' Complaint lacks any plausible allegation

---

[4] The same is true for the other individual Defendants Plaintiffs describe as having final policymaking authority.

11

that the unlawful assembly declaration and dispersal order discriminated based on content or viewpoint. *Id.* Nor did Defendants impose an effective "heckler's veto." *Id.* Plaintiffs thus failed to state a claim for relief based on the First Amendment.

### F. Plaintiffs Failed to State a Fourteenth Amendment Equal Protection Claim

"[T]o survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011) (internal citation omitted). Similarly situated means that individuals "are in all relevant respects alike." *Veney v. Wyche*, 293 F.3d 726, 730–31 (4th Cir. 2002) (internal citation omitted). As discussed above, the Fourth Circuit held in *Kessler*, a case with analogous facts, that the complaint "lack[ed] any plausible allegation that the unlawful-assembly declaration and dispersal order discriminated based on content or viewpoint." 2022 WL 17985704, at *1. So too here Plaintiffs' Complaint fails to state a claim that the unlawful-assembly declaration and dispersal order discriminated against Plaintiffs in a manner violating their Fourteenth Amendment rights.

The Complaint devotes four short allegations exclusively to the Equal Protection Clause claim. The first, plainly conclusory, alleges that Defendants deprived Plaintiffs of equal protection under the law by "above-referenced acts, policies, practices, procedures, and/or customs, created, adopted, and/or enforced under color of state law." Compl. ¶ 70. Plaintiffs also summarily allege that Defendants' policies and practices "as applied on August 12, 2017 violated the Equal Protection Clause." *Id*. ¶ 72.  To the extent that Plaintiffs allege unequal treatment, there is nothing in the Complaint that permits a reasonable inference of disparate application or intentional discrimination. Conclusory allegations that Defendants did not agree with Plaintiffs'

12

views are insufficient without factual support. *See e.g.*, *id.* ¶¶ 26, 52, 64, 66, 71; *see Simmons*, 634 F.3d at 768 ("[The Court need not] accept as true unwarranted inferences, unreasonable conclusions, or arguments.").

The claim fails for other reasons, too. Plaintiffs allege that Defendants granted the use of a public forum to people whose political views Defendants found acceptable but denied use to those whom they disagreed with. *Id.* ¶ 71.[5] And Plaintiffs allege that "[u]pon being advised that violence had broken out the Chief stated, in a complete capitulation to violent counter-protestors, 'Let them fight, it will make it easier to declare an unlawful assembly.'" *Id.* ¶ 38. But Plaintiffs' own allegations are contradicted by other allegations in the Complaint. *Id.* ¶¶ 2, 31, 84. Judge Conrad granted the ACLU's motion for a preliminary injunction after the City of Charlottesville tried to move the protest. *Kessler v. City of Charlottesville, Virginia*, No. 3:17CV00056, 2017 WL 3474071, at *2–3 (W.D. Va. Aug. 11, 2017). And Plaintiffs allege that an unlawful assembly was declared on August 12, 2017, against "the people gathered in and around Lee Park"—thus encompassing both Plaintiffs and the allegedly violent counter-protestors. Compl. ¶ 49. Therefore, the allegations show that Plaintiffs were treated in the same manner as counter-protestors. Further, Plaintiffs allege no non-conclusory facts showing that they and the counter-protestors were similarly situated, i.e., that they were "in all relevant respects alike." *See Veney*,

---

[5] In bringing this claim, Plaintiffs have not alleged that Police Chief Thomas granted or denied anyone use of a public forum. Plaintiffs allege the City revoked Kessler's permit, not Chief Thomas. Compl. ¶¶ 29–31. Thus, much like *Kessler*, 2022 WL 17985704, at *1, the case differs from *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 256–57 (6th Cir. 2015), in which disparate treatment of a particular group, the Bible Believers, "was based explicitly on the fact that the Bible Believers' speech was found to be objectionable by a number of people attending the Festival," and the County violated the group's equal protection rights "by treating them in a manner different from other speakers, whose messages were not objectionable to Festival-goers, by burdening their First Amendment rights." (internal citation omitted).

13

293 F.3d at 730–31 (internal citation omitted) Thus, Plaintiffs' Equal Protection claim must be dismissed.

### G. Plaintiffs Lack Standing to Bring Claims Under RICO

For reasons already addressed, Defendants have immunity from Plaintiffs' RICO claims. And even without such immunity, Plaintiffs' allegations fail to state a claim for a RICO violation. To state a RICO claim, a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) or racketeering activity,'" and that "(5) he was injured in his business or property (6) by reason of the RICO violation." *D'Addario v. Geller*, 264 F. Supp. 2d 367, 388 (E.D. Va. 2003) (citing *Sedima, S.P.R.L. v. Imrex, Co.*, 473 U.S. 479, 496–97 (1985)). The latter two elements "are viewed as standing requirements." *D'Addario*, 264 F. Supp. 28 at 388 (citing *Sedima*, 473 U.S. at 496–97). "An allegation of personal injury and pecuniary losses occurring therefrom are not sufficient to meet the statutory requirement of injury to 'business or property.'" *Bast v. Cohen, Dunn & Sinclair, PC*, 59 F.3d 492, 495 (4th Cir. 1995) (internal citations omitted). Further, "[p]hysical or emotional harm to a *person* is not property under civil RICO and losses which flow from personal injuries are not property under RICO." *Dickson v. FBI Newport News Field Office*, 2016 WL 8261800, at * 1 (E.D. Va. Mar. 2, 2016) (internal citations and quotation marks omitted) (emphasis in original). Plaintiffs have failed to allege injury in their business or property[6] and thus lack standing to assert their RICO claims. *Sedima*, 473 U.S. at 496.

---

[6] They try to claim a deprivation of property rights based on the alleged deprivation of "their right of use, of their permit to peaceable assembl[y]," but the UTR rally permit was issued to Kessler, not Plaintiffs. *Id.* ¶¶ 93 n.2, 28. Without alleging sufficient facts to show injury in their business or property, Plaintiffs' RICO claims must be dismissed for lack of standing.

14

Plaintiffs also fail to state a RICO claim because they have not alleged a pattern of racketeering activity. Racketeering activity is any act "'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." *Sedima*, 473 U.S. at 481–82 (quoting 18 U.S.C. § 1961(1)). Plaintiffs assert racketeering activity based on violations of various statutes.[7] But for each assertion, Plaintiffs fail to provide supporting factual allegations, and many of the statutory violations they list do not involve statutes within the definition of racketeering activity. *See* 18 U.S.C. § 1961(1) (including, of the listed statutes, only § 1951). Thus, the RICO claims must be dismissed.

## Conclusion

For the foregoing reasons, Defendants' motions to dismiss will be granted.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this  27th  day of April, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[7] They contend that Defendants violated 18 U.S.C. § 1961(1)(A) ("obstruction of State or local law enforcement"), violated 18 U.S.C. § 2339 ("relating to harboring terrorists"), violated 18 U.S.C. § 2339A ("relating to providing material support to terrorists"), violated 18 U.S.C. § 2339B ("relating to providing material support to foreign terrorist organizations"), violated 18 U.S.C. § 2339C ("relating to financing of terrorism"), and violated 18 U.S.C. §§ 1962(1)(B) and 1951(a) by interfering with commerce by threats or violence. Compl. ¶¶ 93–94. They argue that "the terrorists, terrorist organizations, and terrorism" at issue are "the Antifa and related organizations." *Id.* ¶ 94.

15